## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

**JOHN DOE,**

      **Plaintiff,**

v.                                       **Civil Action No.  3:24cv912**

**VIRGINIA EAGLE DISTRIBUTING**
**COMPANY, LLC,**                        **JURY TRIAL DEMANDED**

      **Defendant.**

## CLASS ACTION COMPLAINT

John Doe ("Plaintiff") by and through his counsel brings the following Complaint against Virginia Eagle Distributing Company, LLC. ("Defendant" or "Virginia Eagle") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of its illegal use of an employment-purposed consumer report, also known as a background check, that Defendant used to make an adverse decision about the Plaintiff's employment.

## INTRODUCTION

1.      This is a class action for statutory damages, costs, and attorney's fees brought by Plaintiff on behalf of a class of consumer jobseekers and employees against Virginia Eagle pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(3).

2.      The FCRA imposes specific duties on employers such as Virginia Eagle that utilize consumer reports to make hiring decisions, to protect the consumer jobseekers and employees.

3.      Plaintiff was offered a job with Virginia Eagle, which he accepted.

4.      As part of the employment process, Virginia Eagle obtained an employment purposed consumer report about the Plaintiff that contained many inaccurate and false criminal records, which it used to make the decision to not hire the Plaintiff.

5.      Whenever an employer uses a consumer report, in whole or in part, to make an employment decision, it must follow the FCRA's provisions that require it to ensure that a consumer who is subject of an erroneous report will have the ability to correct an inaccurate report or explain an accurate report to his employer.

6.      The Defendant, as an employer, is a user of Plaintiff's employment purposed consumer report.

7.      The Defendant must certify that it has disclosed to the consumer that it may obtain an employment purposed consumer report.

8.      The Defendant must certify that the consumer authorized it to procure an employment purposed consumer report about him.

9.      At least five business days prior to taking any adverse employment action against a consumer based in whole or in part on the report, the Defendant must provide the consumer with a copy of the report and a written summary of his FCRA rights.

10.     Defendant obtained a consumer report about the Plaintiff from Seamless Search, Inc. ("Seamless") a Nationwide Testing Association, Inc., company, which is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.

11.     Seamless sells consumer reports to employers who use the reports to make employment decisions such as whether to offer employment or retain an employee

12.     Upon information and belief, Virginia Eagle has a contract with Nationwide Testing Association, Inc., (NTA)'s agent/affiliate, Seamless, for the provision of employment purposed consumer reports that contains a clause requiring Virginia Eagle to comply with the FCRA, as well as other state and federal laws, rules, codes, and regulations.

13.     Upon information and belief, Virginia Eagle had a contractual obligation to understand and to stay current with the FCRA and other laws.

14.     Upon information and belief, Virginia Eagle has an understanding or interpretation of its FCRA obligations that are contained in a written or electronic document.

15.     Upon information and belief, Virginia Eagle has an FCRA-compliance policy that is based on its understanding or interpretation of its FCRA obligations.

16.     In the alternative, Virginia Eagle has no FCRA-compliance policy.

17.     Upon information and belief, Virginia Eagle followed its FCRA-compliance policy with respect to Plaintiff's employment purposed consumer report.

18.     Upon information and belief, Virginia Eagle treated Plaintiff the same way it treated all of its job applicants and employees for whom it obtained an employment purposed consumer report.

19.     Seamless falsely reported to Defendant that Plaintiff was convicted of felony possession of marijuana, distribution, and failure to appear, as well as other criminal records that were erroneous or obsolete.

20.     Plaintiff has never been convicted of a felony in his life.

21.     Upon receiving a report from Seamless, Virginia Eagle immediately informed Plaintiff that his offer of employment was terminated based on felony conviction information contained in the report.

22.     In rescinding the offer of employment, Virginia Eagle followed its policies and procedures.

23.     When it terminated the offer of Plaintiff's employment, Virginia Eagle did not first provide to the Plaintiff a copy of the consumer report upon which it based its hiring decision at least five business days prior to making the decision.

24.     By rescinding the offer of employment upon receipt of the consumer report, Virginia Eagle did not first provide to the Plaintiff a copy of the FCRA summary of rights at least five business days prior to making the decision.

25.     Providing a copy of the consumer report and FCRA summary of rights at least five business days before taking adverse employment action is often called the pre-adverse action notice requirement.

26.     The pre-adverse action notice must be given prior to making any employment decision based in whole or in part on a consumer report.

27.     The provision's clear purpose is to provide job applicants and employees with an opportunity discuss adverse information in their reports with employers or otherwise respond or seek corrections before adverse action is taken by the employer.

28.     The employer's pre-adverse action notice requirements have been well-established by the relevant regulatory agencies (FTC and CFPB) for over 25 years.

29.     Terminating an offer of employment is an adverse employment action.

30.     Because Defendant terminated Plaintiff's offer of employment upon receiving a report that had felony records in it, it is presumed that the adverse action was based on the criminal records rather than another reason.

31.     Defendant terminated the Plaintiff's offer of employment pursuant to its standard policies and practices, which harm innocent consumers seeking employment by failing to provide the consumer job applicants with the opportunity to discuss or correct inaccurate criminal record information in their consumer reports before the adverse action is taken.

32.     As a direct and proximate result of Defendant's conduct, Plaintiff lost a well-paying job, job security, benefits, opportunity for overtime and advancement.

33.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; labor and money spent trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

34.     Despite the actual damages suffered by the Plaintiff as a result of Defendant's conduct, the Plaintiff is electing to sue on behalf of a class of all consumers that applied for a job at Virginia Eagle and were denied their FCRA rights by being deprived of the pre-adverse action notice, consumer report, and summary of rights at least five days prior to the adverse action.

35.     In Plaintiff's case, the adverse action was rescission of the job offer, however, adverse actions may include, but not limited to, a delay in start date, less pay, fewer benefits, fewer

duties and opportunities for advancement, less favorable working conditions, reduced hours, termination, or loss of benefits.

36.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow the FCRA's requirement that it provide the Plaintiff with pre-adverse action notice and a summary of his FCRA rights at least five business days prior to taking adverse employment action based in whole or in part on a consume report.

37.     Upon information and belief, Defendant followed its standard hiring practice in relying on a consumer report to make a final hiring decision without providing the consumer job applicant or employee the five-days' notice before taking adverse action.

## PARTIES

38.     John Doe ("Plaintiff") is a natural person residing in Fredericksburg, Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

39.     Defendant Virginia Eagle Distributing Company, LLC., ("Defendant" or "Virginia Eagle") is a Virginia corporation doing business throughout the Commonwealth of Virginia and in this District and has a principal place of business located at 827 Lee Highway, Verona, VA 24482.

40.     Among other things, Defendant holds itself out as one of the largest Anheuser-Busch distributors in the United States.

41.     During all times pertinent to this Complaint, Defendant was authorized to conduct business in the Commonwealth of Virginia on a routine and systematic basis.

42.     During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

43.     Any violations by Defendant were not in good faith, but were knowing, willful, intentional, and/or in reckless disregard of the Plaintiff's consumer rights.

44.     In the alternative, Defendant's conduct was negligent.

45.     Upon information and belief, Defendant knew or should have known of its duties under the FCRA especially due to its contractual obligations regarding the FCRA, but maintained an interpretation that was designed to increase its profits at the expense of consumer job applicants' consumer rights.

46.     Upon information and belief, Virginia Eagle did not maintain procedures reasonably adapted to avoid the FCRA violations described herein.

## JURISDICTION AND VENUE

47.     This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

48.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Division, and under 28 U.S.C. § 1391(b)(1) because all parties reside and/or have a place of business in the geographic confines of this District.

49.     This Court has personal jurisdiction over all parties who are residents and/or have a place of business of this District.

## STATUTORY BACKGROUND

50.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as

when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

51.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

52.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

53.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

54.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment purposed consumer reports, also known as background checks, like the one Defendant used to make an adverse decision about Plaintiff's employment.

55.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

56.     In the parlance of the FCRA, background checks are "consumer reports," and employers that utilize such consumer reports, like Defendant, are "users."

57.     The FCRA imposes duties on users such as the Defendant to assure that consumer employees and job applicants are provided the pre-adverse action notices to minimize the possibility

of an applicant being denied employment without knowing, being able to correct, or to explain that the report contain false or misleading information about them.

58.     Under 15 U.S.C. § 1681b(b)(3), Defendant was required to provide the Plaintiff with a copy of his consumer report and the FCRA summary of rights at least five business days prior to taking adverse action.

59.     Instead of providing pre-adverse action notice, Defendant took the adverse action of terminating the Plaintiff's employment application immediately upon receipt of the consumer report from Seamless.

60.     Defendant knew or should have known, but nonetheless disregarded, its duties under the FCRA with respect to use of Plaintiff's consumer report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

61.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

62.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

63.     The criminal public record consumer reporting industry takes in revenues in excess of three billion dollars, annually.[2]

---

[1] CFPB, *Market Snapshot: Background Screening Reports* (Oct. 2019), https://fiels.consumerfinance.gov/f/documents/201909_cfpb_market-snapsho-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

64.     Consumer reports that contain criminal records are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual or in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

65.     Employers, like Defendant, rely on these reports, which are collected from millions of criminal records from many sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis, but instead is purchased in bulk or scraped from court websites.

66.     Given that Defendant uses consumer reports to making employment decisions, Defendant has a duty to be aware of the relevant provisions of the FCRA that govern use by employers and understand the attendant harm to consumers for relying on inaccurate or outdated information.

67.     Employers like Defendants choose consumer reporting agencies to provide the employment purposed consumer reports based on a variety of factors, including cost and speed within which a report may be produced.

68.     In this case, the Defendant requested a report, which Seamless produced within five minutes of the request.

69.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to simply rescind an offer of employment based on a false or misleading report rather than take the time and expend the resources to comply with the FCRA.

70.     Defendant relies on such erroneous and incomplete reports because it wants to maximize the automation of its hiring process.

71.     As a user of employment purposed consumer reports, Defendant knew or should have known of the requirements and statutory liabilities of the FCRA.

## FACTS

### Plaintiff Applies for a Job with Virginia Eagle Distributing Company

72.     On or about January 7, 2023, Plaintiff applied for full-time employment as an Order Selector with Virginia Eagle.

73.     Upon applying to Virginia Eagle, Plaintiff successfully completed an interview and passed a drug test.

74.     Before Virginia Eagle obtained Plaintiff's consumer report, it extended a job offer to Plaintiff for the full-time position to which he applied.

75.     The job offer was conditioned upon Plaintiff passing a background check based on an employment purposed consumer report.

76.     Virginia Eagle scheduled Plaintiff to begin his new job on January 16, 2023.

77.     On or about January 10, 2023, Virginia Eagle ordered an employment purposed consumer report, including a criminal background check, about the Plaintiff from Seamless.

78.     On or about January 10, 2023, within five minutes of receiving the request, Seamless provided a completed, employment purposed consumer report about the Plaintiff to Virginia Eagle.

79.     Within that consumer report, Seamless published inaccurate criminal record information about Plaintiff, that included false reporting of felony convictions.

80.    Specifically, the consumer report Seamless prepared about Plaintiff included grossly inaccurate and stigmatizing felony possession, distribution, and failure to appear convictions from thirteen (13) years ago in Norfolk, Virginia.

81.    The felony possession, distribution, and failure to appear convictions reported by Defendant about Plaintiff are inaccurate.

82.    There were many other inaccurate records in the Plaintiff's report, but Virginia Eagle informed the Plaintiff that only the felony records were disqualifying.

83.    Although Plaintiff has **never** been convicted of a felony in his life, Virginia Eagle's decision to deny Plaintiff employment was based entirely on the false report of felony records.

84.    Upon receiving the Adverse Action notice, Plaintiff attempted to explain that the report was inaccurate, but it was futile because the decision had already been made and nothing that the Plaintiff could do would change Virginia Eagle's mind to deny him employment based on the information in the report.

85.    Virginia Eagle refused to consider any information that Plaintiff offered that came directly from the Court, instead stating that the report itself would have to be changed.

86.    Had Virginia Eagle followed the FCRA, the Plaintiff could have demonstrated to that the Norfolk General District Court has jurisdiction over only criminal cases involving **misdemeanors** under state law and offenses that are violations of ordinances and laws of the county or city where the court is located. Felonies are **only** adjudicated in Virginia **Circuit Courts**.

87.    Therefore, it is not possible that Plaintiff received ANY felony convictions in the General District Court as shown above. The above offenses could only be misdemeanors since they are all under the jurisdiction of the General District Court.

88.     A search of the Virginia court online database showed there were **no records** for Plaintiff under the jurisdiction of the Circuit Court, which handles all felonies.

89.     In fact, Plaintiff **never** pled guilty to or was convicted of felony possession of marijuana, distribution, or failure to appear.  Rather, Plaintiff's possession and failure to appear convictions were *misdemeanors*, not felonies, and Plaintiff was *never* convicted of distribution.

90.     Had Defendant actually given the Plaintiff at least five business days to correct or explain his report, he would be able to show that there are **no records at all** in the Norfolk Courts related to the January 2010 records above because they were purged in 2020.

91.     By statute, Virginia General District Courts purge misdemeanor records after 10 years under Virginia Code § 16.1-69.55.

92.     The disclaimer at the bottom of Plaintiff's consumer report stated: "Seamless Search an NTA, Inc. company does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records."

93.     However, that statement is false. In January 2023, no felony public records about Plaintiff existed, which would have informed the Defendant that the consumer report was false if they had provided a pre-adverse action notice with a copy of the consumer report, a copy of the FCRA summary of rights, and given the Plaintiff five business days to prove that the report was inaccurate.

94.     There were numerous other inaccuracies on Plaintiff's consumer report in addition to the false felony reporting.

**Virginia Eagle Distributing Company Withdraws Its Offer of Employment to Plaintiff**

13

95.     Less than 24-hours after receiving the consumer report from Seamless Search, on January 11, 2023, Virginia Eagle notified the Plaintiff by email of its final adverse action decision -- that his employment application was denied as a direct result of felony convictions that appeared in the consumer report.

96.     The adverse action notice was recorded in a software platform called QuickView, where it clearly shows that the Adverse Action Letter – Employment Withdrawal of Offer was sent to the Plaintiff's email address and which the Plaintiff viewed within a few minutes of receipt.

97.     There was no pre-adverse action notice in the transaction log, nor could there be, since less than 24 hours had passed since Virginia Eagle received the consumer and then withdrew the employment offer.

98.     Upon information and belief, Virginia Eagle made the decision to deny the Plaintiff's application for employment as soon as it saw felony records on his consumer report on January 10, 2023.

99.     On January 11, 2023, Virginia Eagle's representative identified as "Donna," spoke to Plaintiff on the phone and informed him that because there were felonies on his background report, he was being denied employment.

100.    Plaintiff told Donna that he was not a felon and she informed him she could only hire him if the felony reporting was removed from the consumer report by Seamless Search.

101.    Virginia Eagle did not care about misdemeanors.

102.    Upon information and belief, Virginia Eagle employs people who have been convicted of felonies.

103.    Upon information and belief, Virginia Eagle employs people who have been convicted of misdemeanors.

104.    Eventually, Virginia Eagle emailed the Plaintiff, writing that this "letter [is] to inform you that we find it necessary to rescind our previous offer of employment" that has the words "ADVERSE ACTION NOTICE" in large print at the top of the page.

105.    The letter included a copy of the Seamless Search consumer report and a Summary of Your Rights Under the Fair Credit Reporting Act, but it was too late because the Plaintiff's offer of employment had already been terminated.

106.    The felony entries related to possession and distribution of marijuana charges on January 24, 2010, and failure to appear on January 27, 2010.

107.    Plaintiff called and emailed Virginia Eagle to inform them that he has never been convicted of a felony in his life.

108.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he was a convicted felon, both in relation to the Virginia Eagle position, and the impact of the same on his future.

109.    Plaintiff called the Norfolk General District Court, and the Clerk told him there were no records Plaintiff had ever been convicted of a felony. The Clerk also was unable to locate any of the specific records listed above.

110.    Plaintiff also called the Virginia Circuit Courts and the Clerk told him there were no court records at all about him.

111. Upon information and belief, "Donna" refers to Donna Mattejat, who was working in the HR department of Virginia Eagle. Upon information and belief, Ms. Mattejat has over 20 years of experience working as an HR professional.

112. Upon information and belief, the director of Virginia Eagle HR department in January of 2023 was, and currently is, Rebecca Harmon, who has more than 15 years of experience as an HR professional, including 9 years as director at Virginia Eagle. She is a Society for Human Resource Management (SHRM) Certified Professional, among other professional certifications.

113. SHRM is a national association with a mission to "elevate HR" and "empower people and workplaces by advancing HR practices and maximizing human potential."

114. One of the HR practices throughout the United States is the practice of obtaining applicant and employee consumer reports to make hiring decisions.

115. SHRM provides education, updates, policies, procedures, and articles to help its members comply with the FCRA. SHRM has at least 87 resources such as articles, Q&A, and Forms that detail FCRA compliance for HR purposes.

116. Among the specific items of compliance information available to SHRM members is guidance on how to comply with the FCRA's disclosure, authorization, preliminary notice of adverse action, and final notice of adverse action.

117. SHRM has guidance called "FCRA 101: How to Avoid Risky Background Checks," that explains step-by-step the FCRA's procedural requirements that an employer must follow including that the pre-adverse action notice, waiting period, and adverse action notice requirements.

118.    Although there were other erroneous and obsolete records in the report that Defendant received from Seamless, Donna specifically pointed to the erroneous felony record as the reason for taking the adverse employment action.

119.    The Equal Employment Opportunity Commission also published guidance such as EEOC Enforcement Guidance No. 915.000, April 25, 2012, regarding the use of criminal records and best practices in hiring and retention, which was available to the Defendant.

120.    Over the last 28 years, the Federal Trade Commission (FTC) published several FCRA-related guidance letters and publications pertaining to use of public records in hiring and retention, clarifying the employer's responsibility to provide the FCRA mandated safeguards when using a consumer report to make hiring decisions.

121.    Within the past two decades, many court cases in the Fourth Circuit, including federal courts in Virginia, have made it well-established law that employers who use employment purposed consumer reports must provide the pre-adverse action notice at least five business days prior to taking the adverse action.  Even five calendar days is not enough time.

122.    In this case, Virginia Eagle gave the Plaintiff no notice prior to taking adverse action.

123.    In this case, the Adverse Action notice process appears to be automatically generated once disqualifying consumer information is transmitted to the Defendant.

124.    Based on the information available to Virginia Eagle, the expertise of its HR department, especially SHRM membership and certification, as well as FCRA-specific compliance guidance for employers that is widely available to the public, Defendant knew or should have known

that it was supposed to provide the Plaintiff with a pre-adverse action notice prior to taking the adverse action.

125.    Therefore, the Defendant's conduct was willful based on all of the FCRA compliance information it had to disregard in order to implement its illegal adverse action scheme.

126.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA provisions at issue were enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

127.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries including, without limitation, loss of full-time employment and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to demonstrate to the Defendant that the report was false; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLASS ACTION ALLEGATIONS

### PLAINTIFF'S PROPOSED CLASS

124.    Plaintiff brings this action on a class basis, with initial class definitions that follow.

125.    ***The § 1681b(b)(3) Notice Class, on or after January 10, 2018.*** Plaintiff brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Notice Class," of which he is a member, initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were employees of Virginia

Eagle or who applied for an employment position with Virginia Eagle (b) as part of this application process were the subject of a consumer report used by Virginia Eagle from the date five years preceding the date of class certification (c) where the consumer report contained an item that would disqualify the person from such position under Virginia Eagle's policies, (d) which consumer was not then approved, hired, or retained for the position, (e) and to whom Virginia Eagle did not provide a copy of the consumer report and other disclosures required by 15 U.S.C. § 1681b(b)(3)(A)(i) & (ii) at least five business days before the date the adverse employment decision was made.

126.    **Numerosity.** Upon information and belief, because the violation deals with the timing and provision of a pre-adverse action notice that was uniformly applied to applicants and employees about whom the Defendant obtained consumer reports, and because the Defendant is reported to employ 400-1000 employees, it is alleged that the putative Class exceeds 50 members. Information concerning the exact size of the putative Class is within the exclusive possession of Defendant or its agents.

127.    The Class members are so numerous that joinder of all members is impracticable.

128.    **Typicality.** Plaintiff's claims are typical of the claims of the other Class members because all Class members were similarly affected by Defendant's unlawful failure to provide timely pre-adverse action notice in violation of the FCRA.

129.    **Adequacy.** Plaintiff will fairly and adequately protect the interest of the Class Members and has retained counsel competent and experienced in complex litigation, including FCRA class action litigation. Plaintiff is a member of the Class and does not have any interests antagonistic to or in conflict with the members of the Class. Plaintiff's claims are the same as those of the Class, which all arise from the same operative facts and are based upon the same legal theories.

130**.** **Commonality.** Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including by example only and without limitation:

    a. Whether the failure to provide timely a copy of employment-purposed consumer report containing a criminal public record before taking adverse action violated the FCRA;

    b. Whether the timing of Defendant's notice to consumers that employment was declined or terminated based in whole or in part on information contained in a consumer report satisfies the timing requirements at 15 U.S.C. § 1681b(b)(3);

    c. Whether the Defendant followed its policies and procedures in using the Plaintiff's consumer report to make an adverse employment decision;

    d. Whether Defendant had an understanding or an interpretation of the FCRA that was objectively reasonable;

    e. Whether the adjudication of the Plaintiff's application constituted an "adverse action";

    f. Whether Defendants' violations of the FCRA were "willful."

131. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit. Many, if not most, class members may not know or have reason to know that the failure to provide them with a pre-adverse action notice constituted a violation of the FCRA.

132. Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the

adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

133.    **Predominance.** The claims of the class members, including the common questions of law and fact, predominate over any individual facts or legal issues present in the class claims. There are no factual or legal issues that differ among the putative class members because the claims at issue are very narrow – whether the Defendant provided an FCRA-compliant pre-adverse action notice to the Plaintiff and the Class before taking adverse action.

134.    The principal and dominant issues are: (a) whether Defendant took an adverse employment action against a consumer (b) based in whole or in part on a consumer report (c) without first providing to the consumer about whom the report relates (d) a copy of the report; and (e) the current FCRA summary of rights as provided by the Consumer Financial Protection Bureau.

135.    The members of the classes can be identified and ascertained by using the Defendant's own records such as the human resources records of job applicants and employees that were denied employment or terminated based on consumer reports that are located within Defendant's files.    The class may also be identified and ascertained from the records of employment purposed consumer reports from the consumer reporting agencies that supplied the consumer reports to Defendant.

<u>**COUNT ONE – CLASS CLAIM**</u>
**Failure to Provide Pre-Adverse Action Notice – Copy of Report**
**15 U.S.C. § 1681b(b)(3)(A)(i)**

136.    Plaintiff relies on the allegations in the preceding paragraphs to form the basis for the first claim that Defendant violated the FCRA's pre-adverse action notice requirement to provide a copy of the report at least five days prior to taking adverse employment action.

137.    Congress mandated that consumers have a right to the information in their consumer reports when users of consumer reports for employment purposes, such as Virginia Eagle in this case, make decisions based on information in such reports before such a decision is made.

138.    There is no requirement in the FCRA that the adverse items of information are inaccurate, only that the adverse employment decision is based in whole or in part on the adverse information in the report.

139.    Courts, the Federal Trade Commission and the Consumer Financial Protection Bureau have made the determination that a consumer is entitled to at least five business days prior to taking adverse action.  This requirement serves to protect the consumer's right to information guaranteed by Congress in the FCRA.

140.    Virginia Eagle uniformly followed its policies and procedures in making employment decisions in whole or in part based on the consumer reports, including in failing to provide the copy of the consumer report upon which each made its adverse decision regarding the Plaintiff and the putative class.

141.    Virginia Eagle willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an adverse employment decision to Plaintiff and the "Notice Class" before taking adverse action that was based in whole or in part on that report.

142.    Plaintiff and the "Notice Class" members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

143.    Plaintiff and the "Notice Class" members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2) and equitable and/or injunctive relief.

144.    In the alternative to the allegations that these violations were willful, Plaintiff and the "Notice Class" members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

145.    Plaintiff seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

<u>**COUNT TWO – CLASS CLAIM**</u>

**Failure to Provide Pre-Adverse Action Notice – Summary of Rights**

**15  U.S.C. § 1681b(b)(3)(A)(ii)**

146.    Plaintiff relies on the allegations in the preceding paragraphs to form the basis for the first claim that Defendant violated the FCRA's pre-adverse action notice requirement to provide a copy of the report at least five days prior to taking adverse employment action.

147.    Virginia Eagle uniformly followed its policies and procedures in failing to provide a copy of the Summary of Rights to the Plaintiff and the putative class members.

148.    Virginia Eagle willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights required by the FCRA to the Plaintiff and the "Notice Class" Members before taking adverse action that was based in whole or in part on a consumer report.

149.    Plaintiff and "Notice Class" Members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A) and equitable and/or injunctive relief.

150.    Plaintiff and "Notice Class" Members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

151.    In the alternative to the allegations that these violations were willful, Plaintiff and "Notice Class" Members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

152.    Plaintiff seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Certifying a class of consumers as "The Notice Class."

ii.    Ordering Notice of Class Certification be provided to the Class.

iii.    Determining that Defendant willfully violated the FCRA;

iv.    In the alternative, determining the Defendant negligently violated the FCRA;

v.    Awarding Plaintiff and the Class statutory and punitive damages as provided by the FCRA;

vi.    In the alternative, awarding the Plaintiff and the Class actual damages;

vii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

viii.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues.

Dated: December 30, 2024

Respectfully Submitted,

John Doe

_____/s/_____
Susan M. Rotkis, VSB 40693
**Consumer Justice Law Firm**
2290 East Speedway Blvd
Tucson, AZ 85719
T: (602) 807-1504
F: (718) 715-1750
E: srotkis@consumerjustice.com

*Attorneys for Plaintiff*
*John Doe*