IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOHN DOE,<br>    Plaintiff,<br><br>       v.<br><br>VIRGINIA EAGLE DISTRIBUTING<br>COMPANY, LLC,<br>    Defendant. | Civil Action No. 3:24CV912 (RCY) |

**MEMORANDUM OPINION**

This is a Fair Credit Reporting Act ("FCRA") action filed by Plaintiff John Doe against Defendant Virginia Eagle Distributing Company, LLC, for failure to provide pre-adverse action notice as required under the FCRA, 15 U.S.C. § 1681. *et seq.* This matter is presently before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 11. Therein, Defendant moves to dismiss Plaintiff's claims, arguing Plaintiff lacks standing. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, the Court will deny in part and grant in part Defendant's Motion to Dismiss.

**I. FACTUAL BACKGROUND**

Defendant holds itself out as one of the largest Anheuser-Busch distributors in the United States. Compl. ¶ 40, ECF No. 1. Around January 7, 2023, Plaintiff applied for employment with Defendant as an Order Selector. *Id.* ¶ 72. After interviewing Plaintiff, Defendant made Plaintiff a conditional job offer, contingent on him passing a background check. *Id.* ¶¶ 74-75. Three days later, on January 10, 2023, Defendant ordered and obtained a criminal background check from

Seamless Search, Inc. ("Seamless"), a national consumer reporting agency. *Id.* ¶¶ 10, 76–77. The Seamless report was inaccurate and included records that Plaintiff had been convicted of the following felonies: possession of marijuana, distribution, and failure to appear. *Id.* ¶¶ 19, 80. Contrary to the Seamless report, Plaintiff has never been convicted of a felony. *Id.* ¶ 83. Plaintiff does have misdemeanor convictions for "possession and failure to appear," but has never been convicted of any distribution charges. *Id.* ¶¶ 83, 89.

As a result of this inaccurate consumer report, Defendant withdrew its employment offer to Plaintiff on January 11, 2023. *Id.* ¶ 95. Plaintiff was notified of Defendant's decision via email. *Id.* That same day, Plaintiff spoke with Defendant's representative, identified as "Donna," who confirmed that his offer had been revoked based on the felony convictions listed in his background report. *Id.* ¶ 99. Even though Plaintiff explained that the consumer report was inaccurate, "Donna" informed Plaintiff that Defendant could only hire him if the felonies were removed from his consumer report. *Id.* ¶ 100. Plaintiff claims Defendant refused to consider any other information he offered, holding steadfast in its position that the report would need to be changed. *Id.* ¶ 85.

Plaintiff later received an email with an attached letter titled "ADVERSE ACTION NOTICE" that advised him of Defendant's decision to revoke his employment offer. *See id.* ¶ 104. The letter also included a copy of the Seamless consumer report and a document entitled "Summary of Your Rights Under the Fair Credit Reporting Act." *Id.* ¶ 105. Plaintiff subsequently confirmed that no felony records existed with the Virginia Circuit Courts or the Norfolk General District Court and contends that had he been notified of these felony reports, he would have been able to prove they were false or otherwise correct them before Defendant made a final employment decision. *Id.* ¶¶ 86–90, 109–110.

# II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on December 30, 2024, Compl., ECF No. 1, and Defendant timely filed its Motion to Dismiss and Memorandum in Support thereof on February 11, 2025. Mot. Dismiss, ECF No. 11; Mem. Supp., ECF No. 12. On February 25, 2025, Plaintiff filed his Memorandum in Opposition, Resp. Opp'n, ECF No. 12, to which Defendant replied on March 3, 2025. Reply, ECF No. 14. Accordingly, the motion is now ripe for review.

# III. STANDARD OF REVIEW

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish standing, a plaintiff bears the burden of establishing the three "irreducible minimum requirements":

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (citation modified).

A standing challenge is a challenge to the Court's subject matter jurisdiction and is therefore properly considered under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017). The party asserting jurisdiction bears the burden of proving that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Intern. Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (first citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); and then citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction

in one of two ways: facially or factually. *Beck*, 848 F.3d at 270 (4th Cir. 2017); *Adams*, 697 F.2d at 1219.  A facial challenge proceeds similarly to a Rule 12(b)(6) analysis, since "the defendant contends that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Beck*, 848 F.3d at 270 (citation modified).  Thus, in the context of a facial challenge, "the plaintiff is afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration, wherein the facts alleged in the complaint are taken as true, and the defendant's challenge must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* at 270.  Conversely, when faced with a factual challenge, the Court may weigh evidence presented by the parties to determine whether the undisputed facts support a finding of subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

It is Plaintiff's burden to prove that he has standing. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (first citing *McNutt*, 298 U.S. at 189; and then citing *Adams*, 697 F.2d at 1219). Though Plaintiff brings this matter as a putative class action, the Court analyzes standing "based on the allegations of personal injury made by the plaintiff." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (quoting *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017)).

## IV. DISCUSSION

Based on the circumstances surrounding the adverse action taken by Defendant, Plaintiff brings the following two claims:  Failure to Provide Pre-Adverse Action Notice—Copy of Report, pursuant to 15 U.S.C. § 1681b(b)(3)(A)(i) (Count I); and Failure to Provide Pre-Adverse Action Notice—Summary of Rights, pursuant to 15 U.S.C. § 1681b(b)(3)(A)(ii) (Count II).  Defendant moves to dismiss both Counts on the premise that Plaintiff's allegations fail to satisfy all three of the necessary standing requirements. *See generally* Mem. Supp.  In response, Plaintiff argues that

he has clearly demonstrated both a legally protected interest in pre-adverse action notice and a violation of this right through Defendant's conduct. Resp. Opp'n 7-8.[1]

Below, the Court will examine the elements required to establish standing, in turn, as they relate to Counts I and II.

### A. Plaintiff Alleges an Informational Injury as to Count I

For the injury in fact requirement, a plaintiff must demonstrate that he or she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Dreher*, 856 F.3d at 343 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). A harm is concrete when it "actually exist[s]" and is "real and not abstract." *Id.* at 344 (quoting *Spokeo*, 578 U.S. at 340). Though tangible injuries may be easier to recognize, that does not preclude certain intangible harms from being concrete. *Id.* (citing *Spokeo*, 578 U.S. at 340–42). A court may determine that an "intangible harm constitutes an injury in fact" by assessing "history and the judgment of Congress." *Id.* (citing *Spokeo*, 578 U.S. at 331). Courts have recognized a certain type of intangible harm, known as an informational injury, that is based on a plaintiff's allegations that he failed to receive information that he is legally entitled to. *See, e.g.*, *Ramirez*, 594 U.S. at 441; *Dreher*, 856 F..3d at 345. However, the fact that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" does not automatically entitle a plaintiff to an injury in fact. *Id.* (quoting *Spokeo*, 578 U.S. at 341). Put differently, a plaintiff cannot "allege a bare procedural violation," like an informational injury, "divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Id.* (quoting *Spokeo*, 578 U.S. at 341).

---

[1] Plaintiff contends that Defendant had lodged a facial challenge, which Defendant does not contest. Resp. Opp'n 6; *see generally* Reply. The Court agrees.

The parties disagree as to the nature of Plaintiff's alleged injury. *Compare* Mem. Supp. 4–5 (describing Plaintiff's injury as Plaintiff's inability to refute his consumer report directly with Defendant), *with* Resp. Opp'n 12, 14 (clarifying that Plaintiff's injury is an "informational injury" based on Defendant's failure to provide notice, resulting in Plaintiff's inability to correct his consumer report). Plaintiff argues that Defendant misunderstands the injury alleged, Resp. Opp'n 12, 14, but Defendant contends that regardless of the type of injury, Plaintiff has failed to allege a sufficient injury in fact. Reply 5.

The Court first examines, as a threshold matter, whether an informational injury is cognizable, before turning to whether such an injury is sufficiently alleged in Counts I and II specifically.

1. Informational Injury

The Fourth Circuit has recognized that a plaintiff may allege a cognizable informational injury. *See, e.g.*, *Dreher*, 856 F.3d at 345. To do so, a plaintiff must demonstrate that he lacked access to "information to which he is legally entitled and that the denial of that information creates a 'real' harm with an adverse effect." *Id.* In such a situation, a plaintiff must be "denied access to information required to be disclosed by statute, and he 'suffers by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.'" *Id.* (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)).

Courts have also found that violations of the FCRA can constitute a cognizable informational injury. *See, e.g.*, *Ramriez*, 594 U.S. at 431–33. "In enacting the FCRA, Congress sought 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Id.* (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Indeed, Congress "plainly sought to curb the dissemination of false information by adopting

procedures designed to decrease that risk," *Spokeo*, 578 U.S. at 342, and "intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 633 (E.D. Va. 2016). With this context, the Court now turns to the respective arguments before the Court as to Plaintiff's injury in fact.

In Defendant's view, the Complaint does not support an informational injury because Plaintiff's injury stems back to the tangible loss of employment, which Plaintiff's Complaint improperly attributes to Defendant. *Id.* at 3–4. Defendant argues that the plain language of Plaintiff's Complaint revolves around the purported loss of employment, which hinges on Plaintiff's ability to contest a consumer report with Defendant. Reply 1–3. Defendant believes it has no obligation to consider any information offered by Plaintiff to refute the felony conviction information in the Seamless report, and therefore, it cannot be said to have injured Plaintiff. *Id.* at 5. Should the Court find that Plaintiff has properly alleged an informational injury, Defendant argues that such an injury is purely procedural. *Id.* at 5. Defendant insists that the only concrete harm alleged to be attributable to Seamless, not Defendant. *Id.*

Plaintiff counters that Defendant misunderstands the harm alleged. Resp. Opp'n 12. Plaintiff clarifies that his injury is not his inability to maintain his employment with Defendant; rather, it is the deprivation of knowledge and information contained within his reports, as well as the deprivation of his rights guaranteed by the FCRA. *Id.* at 13–14. Plaintiff contends that the statutory purpose of 15 U.S.C. §1681b(b)(3)(A) is to enable an employee applicant to receive his draft report and correct any information *before* any decision or action is commenced against him or her. *Id.* at 12–13. In denying him this information, Plaintiff was in turn deprived of the opportunity to contest the erroneous report before he was terminated or take any other actions

enumerated in the summary of rights. *Id.* at 14. Plaintiff views Defendant's reading of the FCRA's pre-adverse notice obligations as effectively "obliterat[ing] the requirement for a pre-adverse action notice altogether." *Id.* (citing *Lara-Aguilar v. Sessions*, 889 F.3d 134, 144 (4th Cir. 2018)).

Below, the Court examines whether Plaintiff alleges an informational injury as to Counts I and II, beginning with Count I.

### a. Count I: 15 U.S.C. § 1681b(b)(3)(A)(i)

15 U.S.C. § 1681b(b)(3)(A)(i) requires that "before taking any adverse action based in whole or in part on the [consumer] report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—(i) a copy of the report." As an initial matter, multiple district courts within the Fourth Circuit have recognized that a violation of §1681b(b)(3)(A)(i) constitutes an informational injury. *See Branch v. Gov't Emps. Ins.*, 323 F.R.D. 539, 551 (E.D. Va. 2018); *Thomas*, 193 F. Supp. 3d at 637–38; *Scott v. Full House Mktg.*, 2022 WL 657636, at *1, 3 (M.D.N.C. Mar. 4, 2022); *Frazier v. First Advantage Background Services Corp.*, 2018 WL 4568612, at *10 (E.D. Va. Sept. 24, 2018); *Beverly v. Wal-Mart Stores*, 2008 WL 149032, at *3 (E.D. Va. Jan. 11, 2008). In making this determination, courts have repeatedly found that Congress's intent was clear, with respect to § 1681b(b)(3)(A)(i), that "taking an adverse employment action without providing the required consumer report is 'the very harm that Congress sought to prevent, arising from prototypical conduct proscribed'" by the FCRA. *Thomas*, 193 F. Supp. 3d at 637–38 ("Congress provided consumers against whom current or prospective employers are contemplating adverse employment action with the right to receive a copy of the report on which the adverse action is based."); *Frazier*, 2018 WL 4568612, at *9 (noting that a violation of § 1681b(b)(3) "is precisely the 'type of harm *Congress sought to prevent* by requiring disclosure'" (quoting *Dreher*, 856 F.3d at 345)); *Beverley*, 2008 WL 149032,

at *3 ("The statutory purpose of § 1681b(b)(3)(A) is to enable an employee applicant to receive his draft report and correct any of inaccurate information in the report before any decision or action is commenced." (citing *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004)). This Court agrees that failing to provide pre-adverse action notice constitutes an informational injury, given Congress's clear intent for consumers "to receive [a] draft report and correct any inaccurate information in the report before any decision or action is commenced." *Beverley*, 2008 WL 149032, at *3.

Here, the Court finds that Plaintiff has sufficiently alleged that Defendant failed to provide Plaintiff with information he is legally entitled to prior to taking an adverse action against him by rescinding his job offer. Compl. ¶¶ 95, 97–98, 105. At this juncture, it is reasonable for the Court to infer that had Plaintiff been given notice, as required by the FCRA, he could have corrected the inaccurate information with Seamless. *See* Compl. ¶¶ 5, 31, 90. In turn, with proper notice and time to correct this error with Seamless, Plaintiff could have retained his offer with Defendant, as Defendant only rescinded its offer because of the inaccurate felonies listed on Plaintiff's consumer report. *See id.* ¶¶ 98–100. This harm is precisely the "type of harm Congress sought to prevent by requiring disclosure." *Dreher*, 856 F.3d at 345. For these reasons, the Court finds Plaintiff has sufficiently alleged an informational injury to satisfy the injury in fact requirement for Count I.

### b. Count II: 15 U.S.C. § 1681b(b)(3)(A)(ii)

§ 1681b(b)(3)(A)(ii) is similar to its counterpart in that it requires notice of certain information prior to an employer taking an adverse action, but instead requires that the "consumer to whom the report relates [receive]— . . . (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title." § 1681b(b)(3)(A)(ii).

Although *Thomas* and *Frazier* have broadly held that a plaintiff has standing under 15 U.S.C. § 1681b(b)(3)(A), those opinions pre-date *Ramirez*. *See Thomas*, 193 F. Supp. 3d at 637–38; *Frazier*, 2018 WL 4568612, at *9–10. In *Ramirez*, a FCRA case, the Court examined whether plaintiffs had suffered an informational injury when they did not receive "another summary of rights in [their] second mailing," violating § 1681g(c)(2).[2] *Ramirez*, 594 U.S. at 440. Ultimately, the Court determined that there was no "informational injury," in part because plaintiffs did not fail to receive the required information but instead received it in the *wrong format*. *Ramirez*, 594 U.S. at 441. Moreover, the *Ramirez* plaintiffs did not identify any "'downstream consequences' from failing to receive the required information." *Id.* at 442 (quoting *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1004 (11th Cir. 2020)). As a result, the Court concluded that "an asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* (quoting *Trichell*, 964 F.3d at 1004).

The Third Circuit came to a similar conclusion, albeit prior to *Ramirez* decision, when a defendant failed to provide plaintiffs with a summary of their FCRA rights, in violation of

---

[2] 15 U.S.C. § 1681g(c)(2) in its entirety reads:

Summary of rights required to be included with agency disclosures

A consumer reporting agency shall provide to a consumer, with each written disclosure by the agency to the consumer under this section—

(A) the summary of rights prepared by the Bureau under paragraph (1);

(B) in the case of a consumer reporting agency described in section 1681a(p) of this title, a toll-free telephone number established by the agency, at which personnel are accessible to consumers during normal business hours;

(C) a list of all Federal agencies responsible for enforcing any provision of this subchapter, and the address and any appropriate phone number of each such agency, in a form that will assist the consumer in selecting the appropriate agency;

(D) a statement that the consumer may have additional rights under State law, and that the consumer may wish to contact a State or local consumer protection agency or a State attorney general (or the equivalent thereof) to learn of those rights; and

(E) a statement that a consumer reporting agency is not required to remove accurate derogatory information from the file of a consumer, unless the information is outdated under section 1681c of this title or cannot be verified.

§ 1681b(b)(3)(A)(ii).  *Long*, 903 F.3d at 325.  The Third Circuit determined that the violation amounted to a "bare procedural violation, divorced from any concrete harm." *Id.* (quoting *Spokeo*, 578 U.S. at 341).  The Third Circuit reasoned that plaintiffs did not have standing, in part, because "Plaintiffs became aware of their FCRA rights and were able to file this lawsuit within the prescribed limitations period, so they were not injured." *Id.*

Although Plaintiff did not receive the summary of rights at the required time—prior to Defendant's adverse action—Plaintiff did receive the summary of his rights with Defendant's letter which advised him of the decision to revoke his employment offer.  *See id.* ¶¶ 104-105. Further, Defendant is clearly aware of his FCRA rights and has been able to file this lawsuit within the prescribed limitations period. *Id.* ¶ 105; Resp. Opp'n 12.  Therefore, the Court is persuaded that, in light of *Ramriez*, Plaintiff has not identified, nor has the Court found, a "downstream consequence" from failing to receive the required summary of his rights at the necessary time, a Plaintiff was ultimately never prevented from pursuing his rights under the FCRA.  Therefore, Plaintiff has not alleged a sufficient injury in fact with respect to Count II.

2. Right to Dispute with Employer

Next, the Court examines Defendant's argument regarding Plaintiff's right, if any, to dispute his consumer report directly with a potential employer.  Defendant construes the Complaint as articulating an injury based on Plaintiff's inability to contest his consumer report with Defendant.  Reply 2–4.  Relying on case law from the Eighth and Ninth Circuits, Defendant contends that the plain language of the FCRA does not create a separate cause of action by which Plaintiff may sue Defendant for failing to discuss Plaintiff's consumer report with him.  Reply 6–8; *see Schumacher v. SC Data Ctr., Inc.*, 33 F.4th 504, 511-12 (8th Cir. 2022); *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1092 (9th Cir. 2020).  Thus, Defendant argues that Plaintiff does not

11

allege an injury because Plaintiff has no right to dispute the consumer report with Defendant in the first place. Mem. Supp. 5. Further, Defendant contends that a pre-adverse action would not have changed Defendant's action as it was, and still is, illegal to hire a felon to work as a distributor of alcohol. *Id.* at 4–5 (citing Va. Code Ann. § 4.1-225(1)(h)). In response, Plaintiff insists that his injury does not stem from any right to dispute the errors in his consumer report with Defendant. Resp. Opp'n 12 ("Plaintiff does not allege that he was injured because the deprivation . . . cost him a chance to try to jawbone [Defendant]. Rather . . . [Defendant]'s failure to provide [Plaintiff] with the required notices deprived him of the knowledge of the information in his report as well as his rights that are guaranteed by the FCRA to dispute to Seamless . . . thus depriving him of a meaningful opportunity to contest his report to Seamless.").

Even if the Court was persuaded by Defendant's argument that Plaintiff's Complaint suggests that his injury is premised on his right to discuss his consumer report with Defendant, the Court has already determined *supra*, that in the light most favorable to him, Plaintiff has sufficiently alleged an informational injury. Moreover, the Court notes that Defendant's reliance on *Walker* and *Shumacher* is misplaced for two reasons. First, the Eighth and Ninth Circuits focus almost entirely on the question of "a prospective employee's right to discuss with an employer the information in the consumer report prior to the employer taking an adverse action," rather than an informational injury. *Schumacher*, 33 F.4th at 511; *Walker*, 953 F.3d at 1092. Second, in both *Walker* and *Shumacher,* the plaintiff wished to discuss or explain *accurate* information in their consumer reports, whereas here, Plaintiff's consumer report contained inaccurate information. *Schumacher*, 33 F.4th at 511; *Walker*, 953 F.3d at 1092–93. Therefore, *Walker* and *Shumacher* are not apt comparisons, as they are factually distinct and examine a different kind of harm than what Plaintiff alleges here.

Importantly, Plaintiff has explicitly stated that he has not brought his claim on the basis that he has the right to dispute his consumer report with Defendant. *See* Resp. Opp'n 12. In fact, Plaintiff explicitly rejects this framing. *See id.* The Court agrees that Plaintiff's Complaint appears to present both an informational injury as well as injury based on his inability to directly dispute his consumer report with Defendant. However, in light of Plaintiff's explicit rejection, the Court need not continue with its analysis, as Plaintiff only claims an informational injury, and having found one, the Court proceeds as to that injury alleged. *See* Resp. Opp'n 12, 14–15, 17.

As discussed above, Plaintiff has alleged an informational injury as to Count I against Defendant, wherein Defendant deprived Plaintiff of notice prior to taking an adverse action. The "downstream effect" of Defendant's failure to provide notice resulted in Plaintiff's inability to dispute his inaccurate consumer report with Seamless prior to Defendant rescinding his employment offer. However, with respect to Count II, Plaintif's allegations are insufficient to demonstrate an injury in fact based on Defendant's failure to provide his summary of rights. Plaintiff has not alleged a "downstream consequence" from failing to receive the required summary of his rights at the necessary time, as Plaintiff was able to pursue his rights under the FCRA. Therefore, the Court will continue its standing analysis exclusively as to Count I.

**B. Plaintiff's Informational Injury is Traceable to Defendant's Failure to Provide Notice**

Having established that Plaintiff has sufficiently stated an informational harm as to Count I, the Court looks to whether said harm is traceable to Defendant. A plaintiff may establish causation by pleading facts that a defendant "caused the plaintiff's particularized and concrete harm." *Frazier*, 2018 WL 4568612, at *7. This requires "a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," *David*, 704 F.3d at 333, that is not "the result of the independent action of some third party not before the court." *Frazier*, 2018

4568612, at *7 (citation modified) (quoting *Lujan*, 504 U.S. at 560).  Courts have previously found an employer's violation of § 1681b(b)(3) to be connected to plaintiff's informational injury.  *See Thomas*, 193 F. Supp. 3d at 629, 632; *Frazier*, 2018 WL 4568612, at *10; *see also Long*, 903 F.3d at 323 n.6.

Plaintiff argues that because Defendant has misunderstood the injury alleged, Defendant's argument fails to comprehend the relationship between Defendant's failure to provide notice and the harm Plaintiff suffered.  Resp. Opp'n 18.  Plaintiff contends that the actual injury suffered—the informational injury—is clearly traceable to Defendant.  *Id.*

Defendant points out that none of Plaintiff's alleged injuries are the result of Defendant's failure to provide a pre-adverse action notice.  Mem. Supp. 7.  That is, the damages related to Plaintiff's loss of employment opportunities, wages and benefits, damage to his reputation, or money and labor spent trying to correct his background check are all attributable to the inaccurate consumer report provided by Seamless and are unrelated to Defendant's failure to provide a pre-adverse action notice.  Mem. Supp. 7.

The Court agrees with Plaintiff.  Plaintiff's injury is traceable to Defendant's failure to give him notice prior to taking an adverse action.  Although the errors in the consumer report were caused by Seamless, it is Defendant's lack of notice, and subsequent failure to provide Plaintiff time to remediate the inaccurate report, that contributed to Plaintiff's loss of employment.  Had Defendant given Plaintiff pre-adverse action notice, Plaintiff presumably could have contacted the consumer reporting agency and corrected the errors.  Therefore, the Court finds that Plaintiff's allegations sufficiently demonstrate causation as to Count I.

**C. Plaintiff's Harm is Redressable**

Lastly, the Court considers whether Plaintiff's injury is redressable.

The redressability requirement of standing is "not onerous" and requires a plaintiff to show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)). A plaintiff need not show that every injury will be relieved by a favorable decision, rather plaintiffs "need only show that they personally would benefit in a tangible way from the court's intervention." *Id.* (quoting *Sierra Club*, 911 F.3d at 284). Similar to the prior element, courts have found a plaintiff's § 1681b(b)(3) to be redressable. *See Thomas*, 193 F. Supp. 3d at 629, 632; *Frazier*, 2018 WL 4568612, at *10; *see also Long*, 903 F.3d at 323 n.6.

Plaintiff argues that the harm he suffered is redressable predominantly based on the court's ruling in *Thomas*, where the district court found that plaintiff's injury could be redressed through statutory and punitive damages. Resp. Opp'n 19; *see Thomas*, 193 F. Supp. 3d at 629, 632; *see also* Compl. ¶¶ 1, 71, 142 (seeking, *inter alia*, statutory damages).

Defendant counters that a favorable ruling would not redress the alleged harm, as Plaintiff does not show that he would personally benefit in a tangible way from the court's intervention. Reply 11. Defendant argues that none of the injuries alleged relate to Defendant's conduct except for the loss of the well-paying job, and no matter how the Court rules, Defendant would still not be legally obligated to hire Plaintiff. *Id.* In the case of an informational injury, Defendant concedes that a plaintiff may recover statutory damages but argues that Plaintiff here may not allege an informational injury while also seeking redressability based on his loss of employment. *Id.* at 12.

Having previously found that Plaintiff has alleged an informational injury caused by Defendant, the Court also finds that Plaintiff's injury is redressable, at a minimum, through statutory damages. *See Thomas*, 193 F. Supp. 3d at 629, 632; *Frazier*, 2018 WL 4568612, at *10;

15

*see also Long*, 903 F.3d at 323 n.6.  Because the Court is only examining whether or not Plaintiff has standing to bring a claim at this juncture, which Plaintiff has, the Court declines to address each argument and nuance raised by Defendant with respect to determining precisely what punitive damages Plaintiff may be entitled to based on his informational injury.

## V.  CONCLUSION

For the reasons set forth above, the Court will deny Defendant's Motion to Dismiss as to Plaintiff's Count I, Failure to Provide Pre-Adverse Action Notice—Copy of Report, 15 U.S.C. § 1681b(b)(3)(A(i), but will grant Defendant's motion as to Count II, Failure to Provide Pre-Adverse Action Notice—Summary of Rights, 15 U.S.C. § 1681b(b)(3)(A(ii).

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 15, 2025
Richmond, Virginia